**Thomas SCOTT, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CROWN CORK & SEAL COMPANY/ACE AMERICAN INSURANCE COMPANY), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 26, 2002.

Decided Jan. 3, 2003.

further proceedings, both parties shall have the opportunity to argue the specifics of this defense if they so choose.

Michael C. Usher, Whitehall, for petitioner.

Kate A. Smith, Exton, for respondent.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, Judge, and FLAHERTY, Senior Judge.

OPINION BY President Judge COLINS.

The single issue presented for the Court's review is whether exercised stock options issued to an employee by the employer are to be included in the calculation to determine an employee's average weekly wage for purposes of the Workers' Compensation Act (Act), 77 P.S. § 582(e).[1] This issue of whether exercised stock options are to be included in the definition of wages is one of first impression. We reverse the Board's conclusion that the calculation of an employee's average weekly wage does not include stock options issued to an employee, and we remand the matter to the Board with direction that it be remanded to the WCJ for a determination of claimant's earning power.

There is no dispute that claimant Scott established by substantial evidence that he sustained a disabling work injury on or about May 7, 1997. Claimant alleged that his wages were $1,300 per week.[2] Claimant received partial disability benefits for the last week of November 1998 and the first week of December 1998. With those two weeks being the exception, claimant was to receive temporary total disability benefits from April 22, 1997 through January 9, 1999; benefits were suspended effective January 10, 1999. The WCJ calculated claimant's average weekly wage, and that calculation did not include stock options issued to claimant. Claimant and employer filed cross-appeals to the WCJ's

order and determination. The Board affirmed all aspects of the WCJ's decision. Claimant's petition for review filed in this Court presents only one issue, specifically, whether the Board erred in ruling that the employer issued stock options that had been exercised were a fringe benefit properly excluded from the calculation of claimant's average weekly wage.

■ In reviewing a determination of the Board, this Court's scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether the WCJ has committed an error of law, or whether a constitutional violation renders the decision infirm. 2 Pa.C.S. § 704. What constitutes an employee's average weekly wage is a question of law subject to review by this Court. *Arthur Shelley Trucking v. Workmen's Compensation Appeal Board (Bregman)*, 114 Pa.Cmwlth. 138, 538 A.2d 604 (1988). Claimant contends that exercised stock options are compensation, and thus are includable in the average weekly wage calculation.

■ Section 309(e) of the Act, 77 P.S. § 582(e), defines average weekly wage to include board and lodging received from the employer, and gratuities reported to the United States Internal Revenue Service by or for the employee for federal income tax purposes. Excluded from the term average weekly wage are fringe benefits including, but not limited to, employer payments for or contributions to a retirement, pension, health and welfare, life insurance, social security or any other plan for the benefits of the employee or his dependents. Section 309(e) of the Act, 77 P.S. § 582(e). A stock option is the grant

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2626.

2. The weekly amount alleged equals a yearly pay of $67,600.00.

by an employer to an employee of a legally enforceable right to purchase the employer's stock during a specified period in the future at a specified price.[3] Although stock options are a popular incentive compensation device, they generally have no readily ascertainable value at the time they are granted and do not qualify under Section 309(e) as an incentive payment earned on an annual basis. For Pennsylvania state tax purposes, because "the value of the stock option is speculative and not readily ascertainable until exercised ... the taxing authority must wait until the exercise of the stock option to compute the associated tax liability." *Marchlen v. Township of Mt. Lebanon,* 560 Pa. 453, 460–61, 746 A.2d 566, 570 (2000). For federal income tax purposes, the receipt of a stock option is generally not taxable to the employee as income because it has no readily ascertainable fair market value; instead, income taxation is triggered by the transfer of the stock to the option holder when the option is exercised.[4]

■ While we have found no case directly on point, we have given consideration to *Marchlen,* wherein Mr. Chief Justice Zappala, writing for a majority of our Supreme Court noted that a myriad of factors plays into the valuation of stock options, and based thereon, we conclude that likewise, in workers' compensation matters, stock options cannot be valued until the options are exercised. Logically then, where stock options have been exercised a value can be ascertained.

■ The term "wages" is not specifically defined by the Act but is generally recognized as compensation given to a hired person for his or services, based on time worked or output of production. *See Lane Enterprises v. Workmen's Compen-*

*sation Appeal Board (Patton),* 150 Pa. Cmwlth. 395, 615 A.2d 975 (1992), *reversed in part,* 537 Pa. 426, 644 A.2d 726 (1994). It is a term that should be broadly defined to include periodic monetary earnings and all compensation for services rendered without regard to the manner in which such compensation is computed. *Id.*

■ Herein, claimant alleged that he received and exercised the stock options employer issued to him as remuneration for services rendered to employer. Claimant stated that his W–2 statements reflected the value of the stock options, and that that value had been included in the determination of claimant's yearly wage. (Notes of Testimony, June 3, 1999, pp. 22–24.) Claimant submitted an average weekly wage calculation that reflected exercised stock options. (Exhibit C–3.) We note that we have culled through the record and found no substantive evidence to support claimant's average weekly wage calculations. Further, the WCJ rendered no discussion on the existence of stock options, or the exercise of those stock options. Neither did the WCJ issue a conclusion of law as to whether the alleged stock options should have been included in the calculation of claimant's average weekly wages. Therefore, since the WCJ made no determination on this issue, the Board erred in concluding that the exercised stock options were not wages for workers' compensation purposes. Since the WCJ did not render a determination as to the nature of the stock options, *i.e.,* whether or not the stock options were exercised, and did not render a finding regarding whether the stock options should be included as income for the purpose of determining average weekly wage, the case shall be remanded to the

---

**3.** *See Corbin on Contracts,* § 11.1 (rev. ed.1996); 26 C.F.R. § 1.421–7(a)(1).

**4.** IRC §§ 83. 421.

Board with direction that it be remanded for the WCJ for further determination.

Accordingly, the order of the Workers' Compensation Appeal Board is vacated, and the case is remanded to the WCJ for consideration consistent with this opinion.

### ORDER

**AND NOW,** this 3rd day of January 2003, the Order of the Workers' Compensation Appeal Board is vacated, and the case is remanded to the Workers' Compensation Appeal Board, and the Workers' Compensation Appeal Board is directed to, forthwith, remand this matter to the WCJ for consideration and, if necessary, the taking of evidence on the issue of whether stock options are to be considered wages and, if necessary, for a recalculation of the benefits awarded.

Jurisdiction is relinquished.